[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-10939
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 2, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-23005-CV-JEM

JEFFREY KEATING,
RICH HERSH,
BONNIE REDDING,
JASON KOTOCH,
RAYMOND DEL PAPA, et al.,

Plaintiffs-Appellees,

versus

CITY OF MIAMI, a municipal entity,
CITY OF MIAMI BEACH, a
municipal entity, et al.,

Defendants,

MIAMI POLICE DEPT. CHIEF JOHN TIMONEY,
in his individual capacity,
MIAMI POLICE DEPT. DEPUTY CHIEF FRANK FERNANDEZ,
in his individual capacity,
MIAMI POLICE DEPT. MAJOR ADAM BURDEN,
in his individual capacity,
MIAMI POLICE DEPT. CAPTAIN THOMAS CANNON,
in his individual capacity,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(March 2, 2010)

Before WILSON and ANDERSON, Circuit Judges, and RESTANI,[*] Judge.

WILSON, Circuit Judge:

This appeal stems from a 42 U.S.C. § 1983 action brought by Jeffrey Keating, Rich Hersh, Bonnie Redding, Jason Kotoch, and Raymond Del Papa (collectively the "Protesters"), alleging, *inter alia*, violations of their First and Fourth Amendment rights during a demonstration held in November 2003 outside the Free Trade Area of the Americas (the "FTAA") meeting in Miami. Specifically, the Protesters allege that Chief John Timoney ("Timoney"), Deputy Chief Frank Fernandez ("Fernandez"), and Captain Thomas Cannon ("Cannon"), all members of the Miami Police Department, violated the Protesters' First Amendment rights under a theory of supervisory liability when they directed their subordinate officers to disperse a crowd of allegedly peaceful demonstrators, including the Protesters. The Protesters also allege that Timoney, Fernandez, Cannon, and Major Adam Burden ("Burden") of the Miami Police Department

_____

[*]Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

2

violated their First Amendment rights under a theory of supervisory liability when they failed to stop their subordinate officers from dispersing a large crowd of allegedly peaceful demonstrators, including the Protesters. Additionally, the Protesters allege that Timoney, Fernandez, Cannon, and Burden violated their Fourth Amendment rights under a theory of supervisory liability when the subordinate officers "herded" the Protesters out of the demonstration area, claiming that the "herding techniques" constituted an unlawful seizure.

Timoney, Fernandez, Cannon, and Burden appeal the district court's denial of qualified immunity in their motion to dismiss as to the Protesters' First Amendment claims. They argue that they are entitled to qualified immunity because the Protesters did not satisfy the heightened pleading standard for § 1983 actions, and alternatively, because their conduct did not violate clearly established law under the First Amendment. Timoney, Fernandez, Cannon, and Burden also appeal the district court's adverse finding that "herding" of the Protesters constituted an unlawful seizure in violation of the Fourth Amendment because the violation was not clearly established, even though the district court granted them qualified immunity in their motion to dismiss. Upon considering the briefs and the record, and after receiving the benefit of oral argument, we affirm the denial of qualified immunity as to Timoney, Fernandez, and Cannon under the Protesters'

First Amendment claims, reverse the denial of qualified immunity as to Burden under the Protesters' First Amendment claim against him, and dismiss the appeal as to the Fourth Amendment claims for lack of jurisdiction.

## I. BACKGROUND

In the Protesters' first amended complaint, they allege that while peacefully demonstrating outside the FTAA meeting on Biscayne Boulevard in Miami, a police line appeared and engaged the demonstrators, including the Protesters. D.E. 45 at 20–22. The Protesters allege that law enforcement officers began "herding" the demonstrators, using their batons to beat unarmed demonstrators, spraying pepper spray up and down the police line, and discharging bean bags, pepper spray balls, tear gas, and other projectiles. *Id.* at 21–24. The Protesters allege that they were injured as a result of the law enforcement conduct. *Id.* at 26–29. The skirmish line continued with the "herding" of demonstrators and the Protesters by pushing them northward out of the area. *Id.* at 23–24. The Protesters further allege that the unconstitutional acts, including "herding," encirclement, and use of excessive force, were witnessed, condoned, and directed by, *inter alia*, Timoney, Fernandez, and Cannon in their supervisory capacities. *Id.* at 42–44. The Protesters also allege that Timoney, Fernandez, Cannon, and Burden, in their supervisory capacities, could have intervened at any time to prevent the continued

4

constitutional violations against the Protesters, but they failed to do so. *Id.* at 59–61.

Timoney, Fernandez, Cannon, and Burden filed a motion to dismiss the Protesters' first amended complaint on the grounds that they were entitled to qualified immunity from the First and Fourth Amendment claims because the complaint does not satisfy the heightened pleading standard for § 1983 actions, and even if it does, the laws proscribing the alleged constitutional violations were not clearly established. The district court granted in part and denied in part Timoney, Fernandez, Cannon, and Burden's Motion to Dismiss finding, *inter alia*, (1) that they were not entitled to qualified immunity on the First Amendment claims because they violated the Protesters' clearly established constitutional rights by acting in their supervisory capacities to direct and fail to stop the use of less-than-lethal weapons to disperse a crowd of peaceful demonstrators, and (2) that they were entitled to qualified immunity on the Fourth Amendment claims because, although they violated the Protesters' Fourth Amendment rights by "herding" the Protesters, the violation was not clearly established. *Keating v. City of Miami*, 598 F. Supp. 2d 1315 (S.D. Fla. 2009).

## II. JURISDICTION

Before turning to the merits, we must address the issue of our jurisdiction

5

over this interlocutory appeal. We requested the parties to brief the jurisdictional question. After receiving the parties' responses, and upon further consideration, we find that we have jurisdiction for this interlocutory appeal over the Protesters' First Amendment claims, but not over their Fourth Amendment claims.

## A. Jurisdiction over the First Amendment Claims

In *Mitchell v. Forsyth*, the Supreme Court held that a district court's order denying a defendant's motion to dismiss or motion for summary judgment is immediately appealable under the "collateral order doctrine,"[1] when (1) the defendant is a public official asserting a qualified immunity defense, and (2) the issue appealed concerns whether the alleged facts show a violation of clearly established law. 472 U.S. 511, 527–29 (1985).

In *Johnson v. Jones*, the Supreme Court held that the district court's determination, that the summary judgment record raised a genuine issue of material fact concerning an officer's conduct for qualified immunity purposes, was not a "final decision" under 28 U.S.C. § 1291. 515 U.S. 304, 319–20 (1995). Thus, the district court's decision was not immediately appealable. *Id.* The *Johnson* court limited its rule of non-reviewability of qualified immunity orders to *pure issues of*

---

[1] Under *Cohen v. Beneficial Industrial Loan Corp.*, a "collateral order" amounts to a "final decision" under § 1291 if the order: (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) will be effectively unreviewable on appeal from the final judgment. 337 U.S. 541, 546–47 (1949).

*fact*. *Id.* at 313. In other words, the *Johnson* court did not dismiss the interlocutory appeal on an issue of law concerning qualified immunity, but rather dismissed the appeal on the sole issue of disputed facts. *Id.* at 318.

Timoney, Fernandez, Cannon, and Burden argue that this interlocutory appeal from the denial of qualified immunity under the First Amendment claims involves legal determinations, not factual issues, and thus, we have jurisdiction. Specifically, the district court found that Timoney, Fernandez, Cannon, and Burden violated the First Amendment *and* that the violations were clearly established. The district court decision denying qualified immunity on the grounds that Timoney, Fernandez, Cannon, and Burden's actions violated clearly established law is immediately reviewable because Timoney, Fernandez, Cannon, and Burden appeal on the basis that the alleged First Amendment violations were not clearly established. *See Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (finding interlocutory appeal available where "the District Court's denial of petitioner's summary judgment motion necessarily determined that certain conduct attributed to petitioner (which was controverted) constituted a violation of clearly established law"). This Court's appellate jurisdiction in matters challenging the denial of qualified immunity in a motion to dismiss "extends only to the legal issues surrounding the district court's denial of [Timoney, Fernandez, Cannon, and

Burden's] motions to dismiss, *i.e.*, issues concerning whether [the Protesters']

complaint sufficiently alleged the violation of a clearly established right." *GJR*

*Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998).

Moreover, interlocutory appeal is available when the denial of qualified immunity

is only partially based on an issue of law. *Id.* (citation omitted). The fact that

Timoney, Fernandez, Cannon, and Burden also argue that the Protesters did not

meet the heightened pleading standard for § 1983 actions does not foreclose this

Court's jurisdiction. At the motion to dismiss stage in the litigation, "the qualified

immunity inquiry and the Rule 12(b)(6) standard become intertwined." *Id.*

"[W]hether a particular complaint sufficiently alleges a clearly established

violation of law cannot be decided in isolation from the facts pleaded." *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1946 (2009).

Thus, because Timoney, Fernandez, Cannon, and Burden argue that the First

Amendment violations were not clearly established, we have jurisdiction over their

appeal from the denial of qualified immunity as to the Protesters' First Amendment

claims. *See GJR Invs., Inc.*, 132 F.3d at 1366. Additionally, our jurisdiction

extends to determine whether the Protesters' complaint sufficiently alleges clearly

established constitutional violations. *See Iqbal*, 129 S. Ct. at 1947.

**B.     Jurisdiction over the Fourth Amendment Claims**

The district court granted Timoney, Fernandez, Cannon, and Burden qualified immunity as to the Protesters' Fourth Amendment claims. It determined that the "herding" of the Protesters away from the demonstration area constituted an unlawful seizure in violation of the Fourth Amendment. However, the district court found that the conduct did not violate clearly established law. Despite the fact that the district court granted their motion to dismiss on the Protesters' Fourth Amendment claims, Timoney, Fernandez, Cannon, and Burden appeal the adverse determination that their conduct constituted an unlawful seizure in violation of the Fourth Amendment. Because Timoney, Fernandez, Cannon, and Burden were granted qualified immunity, we do not have jurisdiction over this issue on interlocutory appeal. Nor would we if Timoney, Fernandez, Cannon, and Burden were appealing a final order.

First, this issue does not satisfy the *Cohen* test for immediate review on interlocutory appeal because, regardless of a decision on the merits, the result is the same: Timoney, Fernandez, Cannon, and Burden would still be entitled to qualified immunity. Thus, this issue would not be unreviewable on appeal from the final judgment. *See supra* note 1. Second, a party normally may not appeal from a favorable judgment. *See Lindheimer v. Ill. Bell Tel. Co.*, 292 U.S. 151, 176 (1934). *But see Forney v. Apfel*, 524 U.S. 266, 271 (1998) (entertaining an appeal on a

9

collateral issue by a party who won below but did not receive the remedy requested); *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 336 (1980) (entertaining an appeal on a collateral issue by a party who won below and asserted a "continuing stake in the outcome of the appeal"). Third, and most basically, the Supreme Court has denied jurisdiction and discussed the lack of jurisdiction for this type of appeal under procedurally similar circumstances. *See Bunting v. Mellen*, 541 U.S. 1019, 1019 (2004) (denying certiorari on the issue of whether state action was a constitutional violation, even though it was not clearly established).[2] For better or worse, whether on interlocutory appeal or appeal from a final judgment, the Supreme Court has stated that an appellate court "reviews judgments, not statements in opinions." *California v. Rooney*, 483 U.S. 307, 311 (1987) (per curiam) (quotation omitted).

Although there are real concerns about the non-reviewability of adverse findings in this situation,[3] we do not have jurisdiction to review an appeal from the

---

[2] The only way Timoney, Fernandez, Cannon, and Burden could have their claim heard by this Court would be if the Protesters appealed the grant of qualified immunity in the motion to dismiss as to their Fourth Amendment claims. *See Kalka v. Hawk*, 215 F.3d 90, 96 (D.C. Cir. 2000). Then, Timoney, Fernandez, Cannon, and Burden could cross-appeal the adverse determination that their conduct violated the Fourth Amendment. *Id.* However, that situation differs from the one here.

[3] Although the Supreme Court in *Bunting* denied jurisdiction on this very issue before us, appellate review of such adverse determinations is a topic of substantial discussion. Timoney, Fernandez, Cannon, and Burden point out that *Pearson v. Callahan*, 129 S. Ct. 808, 820 (2009), discusses the very issue that they faced because the district court followed the prescribed order of determining whether an individual is entitled to qualified immunity under *Saucier v. Katz*, 533

10

district court's adverse determination, that "herding" of the Protesters constituted an unlawful seizure in violation of the Fourth Amendment because Timoney, Fernandez, Cannon, and Burden were granted qualified immunity on the Protesters' Fourth Amendment claims.

---

U.S. 194, 201 (2001) (requiring a court to first determine whether there was a constitutional violation, and second, to determine whether the violation was clearly established). However, *Pearson* provides no guidance on whether we may review this issue on interlocutory appeal. *Pearson* discussed the problem with addressing the existence of a constitutional violation first when it stated:

> Where a court holds that a defendant committed a constitutional violation but that the violation was not clearly established . . . the defendant's right to appeal the adverse holding on the constitutional question may be contested. . . . [T]he prevailing defendant faces an unenviable choice: compl[y] with the lower court's advisory dictum without opportunity to seek appellate [or certiorari] review, or def[y] the views of the lower court, adher[e] to practices that have been declared illegal, and thus invit[e] new suits and potential punitive damages.

*Id.* at 820 (alterations in original) (quoting *Horne v. Coughlin*, 191 F.3d 244, 247–48 (2d Cir. 1999)) (internal quotation marks omitted). Justice Scalia also voiced his concerns over the unreviewability of the district court's determination of whether conduct constitutes a constitutional violation in *Bunting*, 541 U.S. at 1023–24 (Scalia, J., dissenting from denial of certiorari). Justice Scalia stated that a party should be able to appeal when

> a favorable judgment on qualified-immunity grounds would deprive a party of an opportunity to appeal the unfavorable (and often more significant) constitutional determination. That constitutional determination is *not* mere dictum in the ordinary sense, since the whole reason we require it to be set forth (despite the availability of qualified immunity) is to clarify the law and thus make unavailable repeated claims of qualified immunity in future cases.
>
> . . . Not only is the denial of review unfair to the litigant (and to the institution that the litigant represents) but it undermines the purpose served by initial consideration of the constitutional question . . . ").

*Id.*

11

## III. STANDARDS OF REVIEW

We review the denial of a motion to dismiss *de novo* and determine whether the complaint alleges a clearly established constitutional violation, accepting the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting our review to the four corners of the complaint. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted). Once an officer raises the defense of qualified immunity, the plaintiff bears the burden to show that the officer is not entitled to it. *Id.*

### A. Qualified Immunity Standard

"The defense of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." *GJR Invs., Inc.*, 132 F.3d at 1366. Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct "violates 'clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has established a two-part test for determining whether an officer is entitled to qualified immunity, and the district

12

court has discretion to determine in what order to address each part. *Pearson*, 129 S. Ct. at 818. The court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier*, 533 U.S. at 201). The court must also determine whether the constitutional violation was clearly established. *Saucier v. Katz*, 533 U.S. at 201. If the plaintiff satisfies both parts of the test, then the officer is not entitled to qualified immunity.

**B.     Supervisory Liability Standard**

It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior. *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (citing *Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir. 1992)). However, supervisors are liable under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)). A causal connection can be established by, *inter alia*, "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act

13

unlawfully and failed to stop them from doing so." *Id.* at 1235.

**C.    Heightened Pleading Standard for § 1983 Actions**

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to state a cause of action in "a short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "allows a plaintiff considerable leeway in framing its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." *GJR Invs., Inc.*, 132 F.3d at 1367. Thus, a plaintiff must allege some factual detail as the basis for a § 1983 claim. *Id.* In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, in a § 1983 action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 1948.

Timoney, Fernandez, Cannon, and Burden argue that the Protesters failed to allege sufficient facts to establish a causal connection between their supervisory actions and the alleged constitutional violations by the subordinate officers.

14

Therefore, we first review whether the Protesters' complaint sufficiently alleges violations of the First Amendment under a theory of supervisory liability. If the Protesters allege First Amendment violations, we will determine whether such violations were clearly established at the time the conduct occurred. If the violations were clearly established, then Timoney, Fernandez, Cannon, and Burden are not entitled to qualified immunity.

## IV. DISCUSSION

Timoney, Fernandez, Cannon, and Burden argue that they are entitled to qualified immunity from the Protesters' First Amendment claims. First, they argue that the Protesters' complaint does not meet the heightened pleading standard for § 1983 actions to allege that their conduct rose to the level of constitutional violations. They alternatively argue that if the Protesters sufficiently allege constitutional violations, those First Amendment violations were not clearly established at the time of the demonstration in 2003.

A. **The Protesters' Complaint Sufficiently Alleges Violations of Their First Amendment Rights as to Timoney, Fernandez, and Cannon, but Not as to Burden**

Timoney, Fernandez, Cannon, and Burden allege that the district court erred in applying the heightened pleading standard for § 1983 actions. The Protesters allege that Timoney, Fernandez, Cannon, and Burden were all authorized

15

decisionmakers present on the scene where the FTAA demonstration occurred. They further allege that Timoney, Fernandez, Cannon, and Burden proximately caused the violations of the Protesters' First Amendment rights.

1. **Supervisory Liability for Directing Unlawful Acts in Violation of the First Amendment as to Timoney, Fernandez, and Cannon**

Specifically, the Protesters allege that Timoney, who is the Chief of the Miami Police Department, approved orders permitting the police line to advance while beating unarmed demonstrators and discharging projectiles and tear gas. D.E. 45 at 44. The Protesters allege that Fernandez, Deputy Chief of the Miami Police Department and second in command to Timoney, made the decision to utilize "herding techniques" to corral the demonstrators by personally directing the police lines to march northward. *Id.* at 43. The Protesters allege that Cannon, a Captain in the Miami Police Department, directed the police lines to begin discharging weapons at the unarmed demonstrators. *Id.*

Timoney, Fernandez, and Cannon argue that merely being present among numerous other officers at the time the Protesters were injured, and that authorizing the subordinate officers to discharge a variety of weapons is insufficient to establish that they, in their supervisory capacities, committed a constitutional violation. Specifically, Timoney, Fernandez, and Cannon argue that the Protesters were required to allege that they directed specific officers to

16

discharge weapons and identify the specific police officers who injured the Protesters. This argument is without merit because it is irrelevant which officer inflicted injury or the constitutional violation, so long as the violation was at the direction of Timoney, Fernandez, or Cannon, in his supervisory capacity. *See Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009) (stating that identification of injured individuals does not apply to First Amendment claims, and the same reasoning can be applied to support that plaintiffs need not allege which subordinates caused the alleged injury in supervisory liability claims under § 1983).

In light of the Protesters' allegations, we find that they satisfied the heightened pleading requirement for a § 1983 claim under a supervisory liability theory by alleging a causal connection established by facts that support an inference that Timoney, Fernandez, and Cannon directed the subordinate officers to act unlawfully. *See Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1561 (11th Cir. 1993). The Protesters allege that Timoney, Fernandez, and Cannon committed a violation of the Protesters' First Amendment rights because their commands caused the subordinate police officers to disperse a crowd of peaceful demonstrators, including the Protesters, who were exercising their freedom of expression. Thus,

17

our analysis can proceed to determine whether such constitutional violations were clearly established at the time Timoney, Fernandez, and Cannon directed such unlawful acts. *See infra* Part IV.B.

2. **Supervisory Liability for Failing to Stop the Unlawful Acts in Violation of the First Amendment as to Timoney, Fernandez, Cannon, and Burden**

The Protesters allege that Timoney, Fernandez, Cannon, and Burden, in their supervisory capacities, violated their First Amendment rights by failing to stop the unlawful actions of the subordinate officers. Specifically, the Protesters allege that Timoney and Burden were together when the Protesters were assaulted, standing less than 100 feet from the skirmish line with an unrestricted view of the "herding" of the demonstrators and discharge of projectiles and tear gas, yet failed to stop the police action. D.E. 45 at 60–61. The Protesters further allege that at the precise time they were assaulted, Fernandez and Cannon were close to the rear of the skirmish line with an unrestricted view of the "herding" of the demonstrators and discharge of projectiles and tear gas, yet failed to stop the police action. *Id.*

Timoney, Fernandez, Cannon, and Burden argue that in order to state a supervisory liability claim for failure to stop, the Protesters were required to allege facts to establish any necessity or real opportunity for them to intervene in the conduct of the subordinate officers. They rely on *Ensley v. Soper*, which involved

18

a direct failure to intervene claim under the Fourth and Fourteenth Amendments, requiring the allegations to include facts showing the necessity or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct. 142 F.3d 1402, 1407–08 (11th Cir. 1998). However, the Protesters allege a failure to stop claim under a theory of supervisory liability, which does not require such allegations. A failure to stop claim under a theory of supervisory liability only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it. *See Gonzalez*, 325 F.3d at 1234 (requiring only allegations of a "causal connection between actions of the supervising official and the alleged constitutional violation"). The difference between a direct failure to intervene claim and a failure to stop claim under a theory of supervisory liability lies in the position and authority of the defendant with respect to the person who commits the constitutional violation.

Because Timoney, Fernandez, and Cannon had the authority, and exercised that authority, to direct the subordinate officers to engage in unlawful acts to violate the Protesters' First Amendment rights, they likewise had the authority to stop the subordinate officers from exercising such unlawful acts. Therefore,

19

because Timoney, Fernandez, and Cannon knew that the subordinate officers would engage in unlawful conduct in violation of the Protesters' First Amendment rights by directing such unlawful acts, they also violated the Protesters' First Amendment rights by failing to stop such action in their supervisory capacity. Thus, their alleged failure to stop the subordinate officers from acting unlawfully caused the First Amendment violations, and we proceed to inquire whether their failure to stop violated clearly established law. *See infra* Part IV.B.

However, Burden's alleged failure to stop the subordinate officers' unlawful activity did not *cause* the violations of the First Amendment because Burden did not have the authority to stop the subordinate officers from violating the Protesters' First Amendment rights, even though he was an authorized decisionmaker. Burden did not direct the subordinate officers to engage in unlawful conduct that violated the Protesters' First Amendment rights. Burden's ranking as a Major in the Miami Police Department is subordinate to that of Chief Timoney, and Chief Timoney directed the subordinate officers to engage in unlawful conduct. Burden and Timoney stood next to each other during the demonstration. It would be unreasonable to have expected Burden to stop the subordinate officers' conduct after Timoney directed the subordinate officers to engage in unlawful acts because Burden did not have any authority to contravene Timoney's orders. Additionally,

the Protesters only allege that Burden was present when the subordinate officers engaged in the unlawful activity. Therefore, Burden did not violate the Protesters' First Amendment rights by failing to stop the subordinate officers from conducting such unlawful activity because his inaction did not cause the constitutional violations. The Protesters failed to allege a constitutional violation against Burden, and thus, Burden is entitled to qualified immunity.

**B.      It Is a Violation of Clearly Established Law to Direct and Fail to Stop Unlawful Acts in Violation of the First Amendment**

Under the facts alleged in the Protesters' complaint, Timoney, Fernandez, and Cannon violated the Protesters' First Amendment rights in their supervisory capacities by directing the subordinate officers to use less-than-lethal weapons to disperse a large crowd of allegedly peaceful demonstrators and by failing to stop the subordinate officers from doing the same. Timoney, Fernandez, and Cannon argue that their conduct in violation of the First Amendment was not clearly established.

In order for the Protesters to show that the constitutional violation was clearly established, they must demonstrate (1) "that a materially similar case has already been decided, giving notice to the police;" (2) "that a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the]

21

constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (citations omitted). The Protesters "must point to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida" to show that the constitutional violation was clearly established. *Id.* We find that Timoney, Fernandez, and Cannon violated the Protesters' clearly established constitutional rights because, under the second *Mercado* category, the broader, clearly established principles involving First Amendment rights should govern the specific facts of this case.

Timoney, Fernandez, and Cannon argue that they are entitled to qualified immunity with respect to their First Amendment violations because it is not clearly established that it is unconstitutional "for a supervisory officer to give an order to other officers to use less-than-lethal weapons to disperse a crowd at a large public demonstration," or "for a supervising officer to fail to intervene with regard to another officer's use of less-than-lethal weapons to disperse a crowd at a large public demonstration." Appellants' Br. at 24–25. Although our research has located no cases that illustrate a factually identical violation of the First Amendment, "[p]rior cases clearly establishing the constitutional violation . . . need not be 'materially similar' to the present circumstances so long as the right is 'sufficiently clear that a reasonable official would understand that what he is doing

violates that right.'" *Amnesty Int'l, USA*, 559 F.3d at 1185 (quoting *Hope*, 536 U.S. at 739). "There need not . . . be a prior case wherein 'the very action in question has previously been held unlawful.'" *Id.* (quoting *Hope*, 536 U.S. at 741).[4]

Here, the Protesters had a clearly established right to assemble, protest, and demonstrate peacefully, and they sufficiently allege that they engaged in a peaceful demonstration on public property. As Judge Marcus emphasized in his concurrence in *Amnesty Int'l, USA*,

> [i]f there was any lingering question about whether police officers could completely prohibit individuals or groups from assembling, speaking, and distributing literature, the Supreme Court put an end to it in 1983 when the Court decreed that '[t]here is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment.'

*Id.* at 1187 (Marcus, J., concurring) (alteration in original) (quoting *United States v. Grace*, 461 U.S. 171, 176 (1983)).[5] Thus, the Protesters' alleged

---

[4] We are aware that the Southern District of Florida granted qualified immunity to Timoney, Cannon, and Burden in *Rauen v. City of Miami*, S.D. Fla. 2007, ___ F. Supp. 2d ___, at * 21 (No. 06-21182-CIV Mar. 2, 2007), which was based on the same incident as this case, on a claim for failure to intervene to prevent violations of the First Amendment under a theory of supervisory liability. The district court in *Rauen* held that the violation was not clearly established because "the dearth of case law on this issue, and the lack of any U.S. Supreme Court, Eleventh Circuit, or Florida Supreme Court case finding liability for failure to intervene to prevent violations of the First Amendment, evidence a lack of clearly established law." *Id.* However, because a violation can be clearly established without prior case law, *Rauen* does not affect our decision in this case.

[5] Because *Amnesty Int'l, USA* was not the law at the time of the FTAA demonstrations, we do not reference it as a materially similar case that should have put Timoney, Fernandez, and

conduct—assembling, peacefully demonstrating, and protesting—constituted expressive activities squarely protected by the First Amendment. There cannot be any doubt that Timoney, Fernandez, and Cannon's conduct alleged in the complaint utterly and completely eviscerated the Protesters' ability to continue participation in such protected expressive activity. Thus, the amount of force used to stop the demonstration was immaterial.

Timoney, Fernandez, and Cannon violated clearly established law when, in their supervisory capacities, they directed their subordinate officers to use less-than-lethal weapons to disperse a crowd at a large public demonstration and consequently failed to stop such conduct. The constitutional violation was clearly established because a broader, clearly established principle, that peaceful demonstrators have a First Amendment right to engage in expressive activities, should control the novel facts in this situation. *See Mercado*, 407 F.3d at 1159. Timoney, Fernandez, and Cannon, in directing their subordinates to use less-than-lethal weapons to disperse a crowd of peaceful demonstrators, were aware that their orders to their subordinate officers would violate the Protesters' First Amendment rights. Additionally, Timoney, Fernandez, and Cannon were aware

Cannon on notice; rather, we use it to show that Timoney, Fernandez, and Cannon should have known of their violations of the First Amendment at the time of directing and failing to stop the unlawful conduct.

that their failure to stop the use of less-than-lethal weapons to disperse a crowd of peaceful demonstrators would violate the Protesters' First Amendment rights. The direction of unlawful conduct and failure to stop such unlawful conduct in their supervisory capacities caused the violation of the Protesters' clearly established constitutional rights because it should have been obvious to Timoney, Fernandez, and Cannon that their conduct would violate the Protesters' First Amendment rights. Therefore, Timoney, Fernandez, and Cannon are not entitled to qualified immunity as to the Protesters' First Amendment claims for directing unlawful actions and failing to stop unlawful actions under a theory of supervisory liability.

## V. CONCLUSION

The Protesters sufficiently allege that Timoney, Fernandez, and Cannon violated their clearly established First Amendment rights in their supervisory capacities by directing and failing to stop subordinate officers to use less-than-lethal weapons to disperse a crowd of peaceful demonstrators. Therefore, the district court was correct in denying qualified immunity to Timoney, Fernandez, and Cannon in their motion to dismiss the First Amendment claims. However, the Protesters failed to allege that Burden violated their First Amendment rights in his supervisory capacity by failing to stop the subordinate officers from using less-than-lethal weapons to disperse a crowd of peaceful demonstrators because Burden

25

was merely present and could not contravene the orders directing such unlawful activity given by Chief Timoney. Therefore, Burden is entitled to qualified immunity on the Protesters' First Amendment claims, and we reverse the district court's denial of qualified immunity as to Burden. We dismiss Timoney, Fernandez, Cannon, and Burden's challenge to the district court's finding that "herding" of the Protesters constituted an unlawful seizure in violation of the Fourth Amendment for lack of jurisdiction because they were granted qualified immunity on the Protesters' Fourth Amendment claims.

**AFFIRMED in part, REVERSED in part, and DISMISSED in part.**