[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13166
Non-Argument Calendar

_____

D.C. Docket No. 5:13-cv-00028-ACC-PRL


SEBASTIAN KOTHMANN,

Plaintiff - Appellee,

versus

LUZ ROSARIO,
M.D, in her individual capacity,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 7, 2014)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Luz Rosario appeals the district court's denial of her motion to dismiss Sebastian Kothmann's § 1983 claim on qualified immunity grounds.  Kothmann is a thirty-eight-year-old transgender person, who, from April 13, 2010, until April 23, 2011, was incarcerated in the Lowell Correctional Institution (LCI), a female prison operated by the Florida Department of Corrections, where Rosario was employed as the Chief Health Officer.  In her capacity as Chief Health Officer, Rosario had the authority to grant or deny medical care, to approve referral and consultation requests, and the duty to supervise other medical staff and ensure the provision of adequate medical care to inmates.[1]  Kothmann was born physically female but has lived as a male throughout his adult life.  Six years prior to his incarceration at LCI, Kothmann was diagnosed with Gender Identity Disorder (GID).[2]  In addition to receiving hormone therapy, Kothmann underwent a number of surgical procedures—a hysterectomy, oophorectomy, and double mastectomy—as part of his medical treatment for GID.  Upon arrival at LCI, Kothmann informed medical staff of his diagnosis and ongoing sex reassignment therapy.  He alleges

---

[1] The parties disagree as to the extent of Rosario's authority, among other things, but because this case comes to us in the context of a motion to dismiss we accept the facts alleged in the complaint as true.  *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

[2] The diagnostic criteria for GID include "[a] strong and persistent cross-gender identification . . . , [a] [p]ersistent discomfort with [one's] sex or sense of inappropriateness in the gender role of that sex . . . , [and the absence of] a physical intersex condition . . . [which] cause[] clinically significant distress or impairment in social, occupational, or other important areas of functioning."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 537–38 (4th ed. 1994).  The most recent edition of the Diagnostic and Statistical Manual of Mental Disorders has replaced the term "gender identity disorder" with the more descriptive "gender dysphoria."  Because the parties both refer to Kothmann's diagnosis as one of gender identity disorder, we do the same.

2

that Rosario repeatedly denied his requests for hormone treatment and that his GID ultimately went completely untreated.

Specifically, Kothmann's complaint alleges that: (1) the medically-accepted and appropriate treatment for GID, called triadic therapy, includes hormone treatment, living in the new gender full time, and surgery to change sex characteristics; (2) LCI's medical staff, including Rosario, knew that Kothmann had GID, had been taking hormone treatment for six years, was undergoing gender reassignment, and required ongoing hormone treatment; (3) "[r]egular continued testosterone treatment was medically necessary to treat Mr. Kothmann's GID," and Rosario was "aware of the medically necessary treatment for GID"; (4) LCI's medical staff knew that Kothmann was suffering from symptoms, such as menopause, anxiety, and mood swings, "because of his need for testosterone treatment"; (5) Rosario denied Kothmann's requests for hormone treatment and denied his subsequent formal grievance; and (6) Rosario also "vetoed" a prison doctor's referral of Kothmann to the endocrinology staff, who could prescribe hormone treatment, because "'endocrinology is not for cosmetic issues.'"

Rosario filed a motion to dismiss or, in the alternative, for summary judgment. Rosario argued that Kothmann's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it failed to state an

3

Eighth Amendment claim and that summary judgment should be granted based on qualified immunity.

In support of summary judgment, Rosario filed Kothmann's prison medical records, which showed that Kothmann had received some outpatient mental health counseling, but did not show that the counseling was to treat Kothmann's GID. Rosario also submitted her affidavit, in which she averred, *inter alia*, that: (1) Kothmann did not arrive at LCI from the Leon County jail with a prescription for testosterone; (2) Kothmann was not diagnosed with GID while at LCI; (3) Rosario denied the prison doctor's recommendation for a consultation with an endocrinologist to determine whether Kothmann should begin testosterone because "it was not a life threatening condition"; (4) testosterone is not a medication that is part of the state formulary, and only an inmate who comes to LCI with a prescription can receive testosterone; (5) because Kothmann did not come to LCI with a testosterone prescription from the county jail, "there was no basis to prescribe it during [Kothmann's] incarceration at [LCI]"; and (6) because Kothmann "did not present with gender identity disorder during her mental health and psychiatric evaluations while incarcerated in [LCI], . . .there was no basis to request treatment for gender identity disorder."

In opposition, Kothmann argued that his complaint stated an Eighth Amendment claim and that it was clearly established that the intentional refusal to

provide recognized, accepted, and necessary medical treatment constitutes deliberate indifference. Kothmann argued that Rosario's alternative summary judgment motion should be denied under Federal Rule of Civil Procedure 56(d) because Kothmann had not yet had an opportunity to take discovery.

Nonetheless, Kothmann submitted his own declaration and the declaration of an expert, Dr. Randi Ettner, a clinical psychologist who specializes in the treatment of people with GID. Kothmann averred, among other things, that (1) he was diagnosed with GID in 2005 and, since that time, he has been under a doctor's care and has "regularly taken prescribed testosterone, except when [he] was prevented from doing so by [his] incarceration"; (2) he was housed at the Leon County jail for less than three weeks; (3) he was transferred to LCI before the jail staff's request for a referral to receive testosterone treatment could occur; (3) upon his arrival at LCI, he advised medical staff of his GID diagnosis, his ongoing sex reassignment, and his need for continuing hormone therapy; and (4) he received medication and mental health care for depression and bipolar disorder at LCI, but he did not receive "any treatment at all" for GID.

Dr. Ettner averred that: (1) mental health counseling alone was "inadequate treatment for a hormonally reassigned patient who requires testosterone to maintain emotional well-being and physiological homeostasis"; (2) "the only effective treatment" for Kothmann was hormone therapy; and (3) Rosario's denial

5

of Kothmann's request for hormone treatment was "a gross departure from accepted medical standards."

With respect to the motion to dismiss, the district court determined that Kothmann's complaint alleged that Rosario had refused Kothmann treatment for his GID, which was sufficient to state a plausible claim that Rosario violated Kothmann's clearly established Eighth Amendment rights.  The district court denied Rosario's alternative summary judgment motion without prejudice as premature.[3]

On appeal, Rosario argues that she deserves qualified immunity because no law clearly establishes that inmates have a right to receive hormone therapy as treatment for GID, because Kothmann has failed to allege facts showing Rosario was deliberately indifferent to Kothmann's serious medical needs, and because Florida Department of Corrections policy prohibited Rosario from prescribing hormones to Kothmann.

"We review the denial of a motion to dismiss de novo and determine whether the complaint alleges a clearly established constitutional violation, accepting the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting our review to the four corners of the complaint." *Keating*, 598 F.3d at 762.  "[Q]ualified immunity protects government

---

[3] Rosario does not appeal the denial of her motion for summary judgment.

6

officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (internal quotation marks omitted). We use a two-part test to determine if a party is entitled to qualified immunity, and we have discretion in the order in which we apply the parts. *See Keating*, 598 F.3d at 762. We decide whether the plaintiff's allegations, if true, establish the violation of a constitutionally or statutorily protected right and whether the constitutional right was clearly established at the time of the alleged violation. *Id.*

## I.

Kothmann alleges that Rosario violated his Eighth Amendment rights by refusing to provide medically recognized, accepted, and necessary treatment for his GID. A correctional system's deliberate indifference to a prisoner's serious medical needs,[4] including "psychiatric or mental health needs," violates the Eighth Amendment. *Harris v. Thigpen*, 941 F.2d 1495, 1504–05 (11th Cir. 1991). In order to establish deliberate indifference, a plaintiff must show that a defendant (1) had "subjective knowledge of a risk of serious harm," (2) disregarded that risk, and (3) did so by conduct that was more than mere negligence. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see Lancaster v. Monroe Cnty.*, 116 F.3d

---

[4] The parties agree that GID is a serious medical need, so, for the purposes of this opinion, we assume that to be true.

1419, 1425 (11th Cir. 1997) ("[A]n official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.").

Although a prisoner does not have an Eighth Amendment right to any particular type of medical treatment, the prison must provide constitutionally adequate medical treatment. *See Estelle v. Gamble*, 429 U.S. 97, 103-06, 97 S. Ct. 285, 290-92 (1976). "The failure to provide diagnostic care and medical treatment known to be necessary [i]s deliberate indifference." *HC by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986); *see also McElligott,* 182 F.3d at 1255 (stating that deliberately indifferent conduct includes knowingly failing or refusing to obtain needed medical treatment); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.").

Rosario argues that Kothmann has failed to establish deliberate indifference because Kothmann did receive some medical treatment while at LCI. Rosario notes that Kothmann was treated for "depression, anxiety, and other mental and physical infirmities . . . with anti-anxiety and anti-depression medications, mental health counseling, and psychotherapy treatments." Of course, as the court below noted, Rosario would be entitled to qualified immunity if she can establish that

8

Kothmann "received adequate mental health treatment *for his GID*." Dist. Ct. Order at 9. *Cf. Waldrop v. Evans*, 871 F.2d 1030, 1033-34 (11th Cir. 1989) (noting that courts should not second-guess the judgment of medical professionals as to a particular treatment's propriety).

But here, the posture of this appeal is such that we must constrain our review to the facts alleged in the complaint, *see Keating*, 598 F.3d at 762, which contend that: (1) in the medical community, hormone therapy is the medically recognized, accepted and appropriate treatment for GID; (2) Rosario knew of Kothmann's GID diagnosis, his hormone treatment history, and his medical need for continued hormone treatment; and (3) Rosario knowingly refused to provide Mr. Kothmann with this medically necessary hormone treatment for his GID. Taking these allegations as true, we hold that Kothmann has alleged facts sufficient to show that Rosario knew that hormone treatment was the recognized, accepted, and medically necessary treatment for Kothmann's GID, yet knowingly refused Kothmann's repeated requests for such treatment and thus was deliberately indifferent to a serious medical need. *See McElligott*, 182 F.3d at 1256 (holding that the defendants could be found deliberately indifferent where they knew of a substantial risk of harm and "knowingly provided grossly inadequate, and at times no care"); *Lancaster*, 116 F.3d at 1425 (noting that prison officials act with deliberate indifference when they "know[] that an inmate is in serious need of medical care,

but [they] fail[] or refuse to obtain medical treatment for the inmate"). Kothmann's allegations are sufficient to state a facially plausible Eighth Amendment claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

At this Rule 12(b)(6) stage, we do not decide whether hormone treatment in fact was medically necessary to treat Kothmann's GID or whether Rosario knew in fact that hormone treatment was medically necessary for Kothmann. Nor do we address what other kinds of treatment could adequately address Kothmann's GID or whether Rosario actually provided other adequate treatment to Kothmann. Our review is limited to the four corners of the complaint, and the complaint alleges sufficient facts to survive Rosario's motion to dismiss.

## II.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002) (internal quotation marks omitted). The unlawfulness of the act in question must be apparent in light of pre-existing law, but there is no requirement that the act have been previously held unlawful. *Id.* "[B]road statements of principle can clearly establish law applicable in the future to different sets of detailed facts." *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010) (internal quotation marks

omitted).  For a broad principle "to establish clearly the law applicable to a specific set of facts facing a governmental official, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted."  *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002) (internal quotation marks omitted).

Rosario argues that she has not violated a clearly established right because no court has recognized that inmates with GID have a right to receive hormone replacement therapy.  Rosario notes that other courts to address the issue have held that inmates are entitled to *some* form of treatment, but not necessarily their preferred method.  *See, e.g.*, *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.").

As discussed above, by 1986, it was well settled in this Circuit that intentionally refusing to provide medically necessary treatment constitutes deliberate indifference and violates the Eighth Amendment.  *See Jarrard*, 786 F.2d at 1086; *Ancata*, 769 F.2d at 704.  As also discussed, we accept as true the complaint's allegations that Rosario knew hormone treatment to be the accepted, medically necessary treatment for Kothmann's GID.  Thus, at the time of

11

Kothmann's incarceration in 2010, the state of the law was sufficiently clear to put Rosario on notice that refusing to provide Kothmann with what she knew to be medically necessary hormone treatments was a violation of the Eighth Amendment. *See Hope*, 536 U.S. at 741, 122 S. Ct. at 2516.[5] Because Kothmann has alleged facts sufficient to show that Rosario violated clearly established constitutional rights, we hold that the district court did not err in denying Rosario's motion to dismiss.

**AFFIRMED.**

---

[5] On appeal, Kothmann argues that Rosario was deliberately indifferent because: (1) her refusal to continue his hormone therapy was "grossly inadequate" medical care; and (2) she failed to provide any treatment for Kothmann's GID whatsoever. *See Greason v. Kemp*, 891 F.2d 829, 835 (11th 1990) ("[O]ne who provides grossly inadequate psychiatric care to a prison inmate is deliberately indifferent to the inmate's needs."). We need not address these alternative theories of Eighth Amendment liability because the intentional failure to provide medically recognized, accepted, and necessary treatment, as specifically alleged in Kothmann's complaint, is sufficient to state a facially plausible Eighth Amendment claim under Federal Rule of Civil Procedure 8.