[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11729
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-02909-CAP


COREY TOOLE,

Plaintiff - Appellee,

versus

CITY OF ATLANTA, et al.,

Defendants,

OFFICER ZORN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 26, 2019)

Before JILL PRYOR, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Aaron Zorn, a sergeant in the Atlanta Police Department, was sued by Corey Toole for violating his First and Fourth Amendment rights, after Zorn arrested Toole for disorderly conduct during a protest march. Zorn appeals the denial of his motion for summary judgment on these claims, specifically challenging the district court's determination that he was not entitled to qualified immunity. Reading the facts in the light most favorable to Toole—as we must—we affirm.

**I**

**A**

Toole was involved in a protest march through the streets of downtown Atlanta following a grand jury's decision not to indict the officer involved in the shooting of Michael Brown in Ferguson, Missouri. The Atlanta Police Department (APD) used a "leapfrogging" technique to block off the protesters' route, which involved rolling closures of streets as the protesters reached them—rather than shutting down the entire protest route all at once—to minimize the march's impact on traffic. Although many of the protesters were peaceful, some individuals engaged in violence and vandalism as the protest progressed—there's no evidence that Toole was involved in these activities. Worrying that the protesters might vandalize businesses or breach a highway, the APD ordered that the protesters

2

should be dispersed. At the time this order was issued, Toole was near the intersection of Ivan Allen Boulevard and Peachtree Street. APD officers at the intersection directed the protesters to clear the street, and the officers—including Zorn—were instructed to arrest individuals who did not comply.

Toole heard officers ordering people to get out of the street, and he says that he got on the sidewalk immediately in response. He also claims that he heard other protesters saying that the APD was arresting people who were filming the event. Toole alleges that Zorn pulled him off of the sidewalk and into the street, throwing him to the ground and causing several injuries, including a chipped tooth—Zorn thereafter placed flex cuffs on Toole's wrists, arrested him, and escorted him to an APD paddy wagon. Zorn, by contrast, claims that Toole was *not* on the sidewalk when he was arrested, but rather that he was still in the street.

In the moments before his arrest, Toole had been recording a video of APD officers telling the protesters to disperse—he zoomed in on an Officer Turner, getting a shot of his name embroidered on his jacket and saying his name out loud. As an officer begins to grab him, Toole can be heard in the video protesting that he was on the sidewalk. Toole's phone continued to record during his arrest, and in a second video he can be heard repeating to officers that he had been on the sidewalk when he was arrested. His phone was returned to him before he entered the paddy wagon, and he recorded a brief video once inside documenting his facial injuries.

3

Toole's videos do not clearly show whether he was on the sidewalk or the street when he was arrested, but they do show that many APD officers and vehicles were in the street, that he was seized after filming Officer Turner's name and face, and that he consistently contended that he had been on the sidewalk at the time of his arrest. Zorn says that he had no idea that Toole was filming on his phone at the time of his arrest.

Zorn cited Toole for disorderly conduct under Atlanta City Ordinance § 106-81(9), which states:

> It shall be unlawful for any person within the corporate limits of the city to engage in any conduct described in the following subsections; provided, however, that no person shall be convicted of any of the following sections upon a showing that the predominant intent of such conduct was to exercise a constitutional right to: . . .

> (9) Stand or remain in or about any street, sidewalk, overpass or public way so as to impede the flow of vehicular or pedestrian traffic, and to fail to clear such street, sidewalk, overpass or public way after being ordered to do so by a police officer or other lawful authority . . . .

This citation was ultimately dismissed, and Toole was not prosecuted.

## B

Toole sued the City of Atlanta and a group of APD employees in their individual capacities on a number of federal and state law claims. We limit our discussion here to the district court's decision to deny summary judgment on the two claims against Zorn at issue on appeal—violations of Toole's First and Fourth

4

Amendment rights under 42 U.S.C. § 1983.  Zorn moved for summary judgment on these claims, asserting a defense of qualified immunity.

The district court denied Zorn qualified immunity on both claims.  With respect to the Fourth Amendment claim, the court held that Zorn did not have actual or arguable probable cause to arrest Toole.  Specifically, it held that since the portion of the road where Toole would have been standing had been blocked off by the APD, "it [was] impossible for Toole to impede traffic" at the time of his arrest, regardless of whether he had been standing on the sidewalk.  Indeed, the court stated that "logic dictates that police cannot stop traffic—using patrol cars and barriers—to allow protestors to march in the street, and then arrest Toole for blocking traffic."  In addition, the evidence was not clear as to whether Toole was on the sidewalk or the road at the time of his arrest.

Likewise, because Toole's unlawful arrest impeded his ability to engage in protected First Amendment speech—namely, protesting and filming police activities—the district court held that Zorn also violated Toole's clearly established First Amendment rights to protest and film police conduct.

**II**

"We review *de novo* the denial of a motion for summary judgment by a district court on the basis of qualified immunity, construing all facts and making all reasonable inferences in the light most favorable to the non-moving party."

5

*Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citation omitted).  So, in this case, we must "resolve all reasonable doubts about the facts in favor of the non-movant," Toole.  *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (citation omitted).  Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and facts are "material" if they pertain to "a legal element of the claim under the applicable substantive law which might affect the outcome of the case," *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted).

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The qualified immunity doctrine is generous—"it protects all but the plainly incompetent or those who knowingly violate the law."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks and citation omitted).  Here, we must decide

6

whether Zorn is entitled to qualified immunity for his alleged violations of Toole's

First and Fourth Amendment rights.

## III

Our analysis of qualified immunity begins with the threshold question

whether Zorn "was acting within his discretionary authority" during the event in

question. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Toole

concedes this element, so we can proceed to the next step in our analysis, where

the burden of proof "shifts to the plaintiff to show that the official is not entitled to

qualified immunity." *Id.* at 1137. This is a two-step process: The plaintiff must

show (1) "that the defendant's conduct violated a statutory or constitutional right"

and (2) that this "violation was 'clearly established.'" *Id.* (citations omitted).

Toole alleges that Zorn violated both his clearly established First and Fourth

Amendment rights. We'll take the Fourth Amendment claim first.

## A

## 1

The Fourth Amendment guarantees an individual's right to be free from

"unreasonable searches and seizures." U.S. Const. amend. IV. An arrest

constitutes a "seizure of the person," *California v. Hodari D.*, 499 U.S. 621, 624

(1991) (citation omitted), "and the 'reasonableness' of an arrest is, in turn,

determined by the presence or absence of probable cause." *Skop*, 485 F.3d at

7

1137.  "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."  *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002) (quotation omitted).

"While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity.  We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to be supported by probable cause."  *Skop*, 485 F.3d at 1137.  Rather, when evaluating qualified immunity, we employ a more relaxed standard of "[a]rguable probable cause"—whether "reasonable officers in the same circumstances and possessing the same knowledge as [Zorn] *could have believed* that probable cause existed to arrest" Toole.  *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (emphasis added) (quotation omitted).  The arguable probable cause standard contemplates that police "officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists."  *Skop*, 485 F.3d at 1137.

So, even if an officer arrests an individual without *actual* probable cause—in violation of the Constitution—he has not violated that individual's "clearly

8

established" rights for qualified immunity purposes if he nevertheless had *arguable* probable cause to make the arrest.

**2**

Our analysis of whether an officer had probable cause is based on the elements of the crimes alleged and the available facts. *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1333 (11th Cir. 2004). Since Zorn claims only that he had probable cause for a violation of Atlanta City Ordinance § 106-81(9), we limit our discussion to the elements of that statute. *Cf. Skop*, 485 F.3d at 1138.

Atlanta City Ordinance § 106-81(9) states that it is unlawful to "[s]tand or remain in or about any street, sidewalk, overpass or public way so as to impede the flow of vehicular or pedestrian traffic, and to fail to clear such street, sidewalk, overpass or public way after being ordered to do so by a police officer or other lawful authority." The ordinance provides an exception for individuals who can "show[] that the predominant intent of such conduct was to exercise a constitutional right." *Id.* § 106-81. Here, Zorn has asserted that he had actual and arguable "probable cause to believe that [Toole] stood and/or remained in the street in a way that impeded the flow of traffic and failed to clear the street after being given a lawful order to do so."

At this stage, we must read the facts in the light most favorable to Toole, resolving all doubts in his favor. Here, therefore, we must assume that Toole

9

complied with law enforcement instructions and got on the sidewalk as instructed—meaning he was *not* violating APD orders to clear the streets when he was arrested for doing just that.  We must also assume—as Toole's video seems to indicate—that there was no traffic to impede at the time of his arrest, as the roads were closed (which Zorn concedes) and full of APD officers.  Additionally, the predominant intent of Toole's presence at the scene was to exercise his First Amendment right to protest and film police conduct.  *See* Atlanta City Ordinance § 106-81.  In light of these facts and inferences, according to what we must assume—that Toole was standing on the sidewalk, exercising his First Amendment rights, adjacent to a blocked-off street—we must conclude that Zorn did not have probable cause to arrest Toole for impeding traffic in the street in violation of law enforcement instructions.

Because several fundamental questions—(1) whether Toole was even in the street at the time of his arrest, (2) whether there was any traffic for Toole to impede, and (3) whether Toole's predominant intent was to exercise his First Amendment rights, which would exclude him from the ordinance's purview altogether—are disputed and remain unresolved, deciphering "this highly disputed factual record" is "exactly the sort of factual, credibility-sensitive task best left to the jury." *Skop*, 485 F.3d at 1141.

10

**3**

On the facts as we must take them at this juncture, Zorn didn't have *actual* probable cause to arrest Toole—meaning he violated Toole's Fourth Amendment rights—but that doesn't conclude our discussion.  As explained above, Zorn is held to a more lenient standard of *arguable* probable cause under our qualified immunity analysis, for purposes of determining whether he violated Toole's "clearly established" rights.  Rights are clearly established when "every 'reasonable official would [have understood] that what he is doing violates that right,'" and "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (quotations omitted).  Here, such precedent must have been created by the Supreme Court of the United States, this Circuit, or the Supreme Court of Georgia.  *See, e.g.*, *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012).

In this case our analysis is straightforward, as "our binding precedent clearly establishe[s] . . . that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures," *Skop*, 485 F.3d at 1143 (citations omitted), and we don't think, at least on the facts as we must construe them, that Zorn had arguable probable cause.  This Court has consistently held that "[s]howing arguable probable cause does not . . . require

11

proving every element of a crime," *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010) (citation omitted), but here, it seems to us that *none* of the elements were met, when reading the facts in Toole's favor.  No reasonable officer could have believed that there was probable cause to arrest Toole for standing in the street and impeding traffic if Toole was on the sidewalk and the streets were closed to traffic.  "[Q]ualified immunity protects the police . . . but only up to the line defined by the arguable probable cause standard."  *Skop*, 485 F.3d at 1144.  So, in a situation where "the resolution of disputed critical facts determines on which side of this line the officer's conduct fell, summary judgment is inappropriate," and Toole is "entitled to have [his] case heard by a jury."  *Id.*

## B

## 1

Now on to the First Amendment.  "[W]hen an officer has arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest."  *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018).  But as we have already explained, here Zorn did *not* have arguable probable cause to arrest Toole, so he isn't automatically entitled to qualified immunity on Toole's First Amendment claim.  Eleventh Circuit precedent holds that individuals have "a First Amendment right, subject to reasonable time, manner and place restrictions, to

12

photograph or videotape police conduct," *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (collecting cases) (holding that "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest"), as well as to engage in lawful protests, *Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010) (holding that individuals have "a clearly established right to assemble, protest, and demonstrate peacefully"). Additionally, we've established that law enforcement officers may not arrest an individual as a way "to thwart or intrude upon First Amendment rights otherwise being validly asserted." *Kelly v. Page*, 335 F.2d 114, 119 (5th Cir. 1964).

Toole was engaging in constitutionally protected activities—namely, protesting and filming police conduct—at the time of his unlawful arrest. *See, e.g.*, *Keating*, 598 F.3d at 766; *Smith*, 212 F.3d at 1333. Toole alleges that Zorn's actions were aimed at preventing him from continuing to film police activity. He recalls protesters saying that people in the crowd were being grabbed and arrested by officers for filming, and Toole's video of the event shows that he was arrested after zooming in on an officer's name and saying it out loud. The fact that his phone was returned to him and that was able to film inside the paddy wagon does not change the fact that Toole's unlawful arrest stopped him from continuing to

13

participate in the protest or film police conduct in public, or that his arrest was allegedly effected to stop him from filming.

So, reading the facts in Toole's favor, he was engaging in protected First Amendment activities when Zorn unlawfully arrested him to stop him from filming police activities. Thus, Zorn violated Toole's First Amendment rights.

**2**

Next, we must determine whether Toole's First Amendment rights were clearly established at the time of his arrest. For Toole to show that his First Amendment rights were clearly established, he "must demonstrate (1) that a materially similar case has already been decided, giving notice to the police; (2) that a broader, clearly established principle should control the novel facts in this situation; or (3) this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Keating*, 598 F.3d at 766 (internal quotation marks and citation omitted).

This Court has established that individuals have "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct" and that "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith*, 212 F.3d at 1333 (collecting cases). We've also held that individuals have a clearly established right

14

to protest peacefully and "engage in expressive activities." *Keating*, 598 F.3d at 761, 767 (holding that protesters' clearly established First Amendment rights were violated when law enforcement officers directed and failed "to stop subordinate officers [from using] less-than-lethal weapons to disperse a crowd of peaceful demonstrators," even though district court granted qualified immunity as to the protesters' Fourth Amendment claim). It is also clearly established law in this Circuit that law enforcement officers cannot punish or retaliate against individuals for expressing their First Amendment rights. *Bennet v. Hendrix*, 423 F.3d 1247, 1255–56 (11th Cir. 2005) (collecting cases).

Reading the facts in Toole's favor, he was unlawfully arrested without arguable probable cause while engaging in protected First Amendment conduct—protesting and filming police activities—specifically to stop him from doing so. Zorn, therefore, violated Toole's clearly established First Amendment rights and isn't entitled to qualified immunity.

**AFFIRMED.**

15