[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14023
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cv-00488-SPC-MRM

STEPHEN MCNEELEY,

                                        Plaintiff - Appellee,

versus

NORMAN WILSON,
Lieutenant,
SERGIO BERTUZZI,
Corporal,
ANTHONY FENECH,
Deputy,
NICHOLAS RISI,
Deputy,
DAVID COX,
Deputy,
MARK GEYER,
Deputy,

                                        Defendants - Appellants,

JOHN DOE #1, etc., et al.,

                                        Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 2, 2016)

Before MARCUS, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Defendants-Appellants Norman Wilson, Sergio Bertuzzi, Anthony Fenech, Nicholas Risi, David Cox, and Mark Geyer appeal the district court's denial of summary judgment on the basis of qualified immunity in favor of Stephen McNeeley, an inmate at Charlotte County Jail in Punta Gorda, Florida. The complaint, filed pursuant to 42 U.S.C. § 1983, alleges that the Defendants violated McNeeley's civil rights when they sprayed him with chemical agents, placed him in four-point restraints for four hours without a decontamination shower, and then returned him to his contaminated cell.  Among other things, he brought an Eighth Amendment claim based on deliberate indifference to his serious medical needs against Bertuzzi, Fenech, Cox, Geyer, and Risi; an unlawful conditions-of-confinement claim against Bertuzzi and Wilson; and supervisory liability against Bertuzzi and Wilson.  On appeal, the Defendants argue that the district court erred in denying their motions for summary judgment seeking qualified immunity on

2

these claims because no clearly established constitutional rights were violated. After careful review, we affirm in part, reverse in part, and remand.[1]

We review de novo a district court's ruling on a summary judgment motion based on qualified immunity, and resolve all issues of material fact in favor of the plaintiff.    McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[G]enuine disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (quotation omitted).  "For factual issues to be considered genuine, they must have a real basis in the record."  Id. (quotation omitted).  "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).

The relevant facts -- at the summary judgment stage -- are these.  McNeeley has been incarcerated in various Florida prisons since 1999.  McNeeley was at the Charlotte County Jail in September 2008 when the incidents at issue occurred.  On September 5 and 6, McNeeley complained several times to corrections officers that

---

[1] McNeeley also moved to dismiss this appeal for lack of jurisdiction, but an earlier panel of this Court disagreed.  After further review, our holding remains the same.  Because the district court's order denying the Defendants' motions for summary judgment on qualified immunity grounds rests in part on conclusions of law, the order is immediately appealable under the collateral order doctrine.

3

next-door inmate Bruce Swartz (or Schwartz) was creating a noise disturbance by screaming and beating on the walls. When McNeeley was told Swartz would not be relocated to a different cell, he papered his cell window and kicked on his cell door in an attempt to force a meeting with Corporal Bertuzzi, the jail's daytime watch commander. In response, Bertuzzi went to McNeeley's cell on September 7 with Deputies Fenech, Cox, and Risi. Bertuzzi and Fenech brought canisters of chemical agents. At least three canisters were sprayed into McNeeley's food port, which he attempted to block with his sleeping pad. Risi thrust a broomstick through the food port to clear the mattress pad and struck McNeeley's wrist, and part of the broomstick broke off inside McNeeley's cell. After the mattress pad was pulled out through the food port, McNeeley continued to disobey demands by the officers to slide his hands through the food slot for handcuffing and to give back the broomstick, and Fenech continued to spray chemical agents.

About one hour after the initial spraying, a Corrections Emergency Response Team (CERT) extracted McNeeley from his cell and bound him in a four-point restraint chair in the jail's recreation yard. Defendants Geyer and Risi were on the CERT team, and Wilson was the watch commander at the time. The CERT team denied requests by McNeeley to decontaminate, and bound his wrists so tightly that he began to lose circulation. The nurse on duty ordered the restraints loosened after approximately one hour. She later testified she was worried and upset about

4

injuries to McNeeley's right hand.  No other inmate that she was aware of had ever been restrained for so long after being pepper sprayed.  McNeeley complained that he was having extreme difficulty breathing, his skin was burning, and his eyes were red; the nurse testified that "[h]e was tearing and his eyes were red . . . [a]nd he said his skin was burning."  After about three hours in the restraint chair, McNeeley was allowed to shower for approximately five to ten minutes.  Then he was returned to his cell, which he asserts had not been decontaminated.  He continued to seek medical attention up to three months after the spraying for cracked and peeling skin and his injured wrist.  He also continued to write medical requests complaining that his eyes were bothering him.

Section 1983 supplies a remedy to a plaintiff "who can prove that a person acting under color of state law committed an act that deprived [him] of some right, privilege, or immunity protected by the Constitution or laws of the United States." Hale v. Tallapoosa, 50 F.3d 1579, 1582 (11th Cir. 1995).  Even if a plaintiff can make out the elements of a section 1983 claim, government officials may raise qualified immunity as an affirmative defense. Qualified immunity shields government officials sued in their individual capacities from liability against a plaintiff's § 1983 claims if the officials' conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010)

5

(quotation omitted).  "The initial inquiry in a qualified immunity case is whether the public official proves 'that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Id. at 1254 n.19 (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)). If so, the court must ascertain: (1) "whether the plaintiff's allegations, if true, establish a constitutional violation"; and (2) "whether the right violated was 'clearly established.'" Id. at 1254.  That right may be established by "specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." Goebert v. Lee Cty., 510 F.3d 1312, 1330 (11th Cir. 2007).  The courts are "afforded the flexibility to determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all." Maddox v. Stephens, 727 F.3d 1109, 1121 (11th Cir. 2013).

For starters, the Defendants were acting within the scope of their discretionary authority when the incidents took place.  "To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'"  Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) (quotation omitted).  In applying this test, "we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been

6

committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004). Because there is no genuine issue of material fact concerning whether inmate discipline and control is a primary job responsibility for the Defendants, we agree that their acts -- regardless of whether these acts were improper -- were well within the scope of their discretionary authority.

We next turn to the Defendants' argument that the district court erred in denying them summary judgment on their qualified immunity defense to McNeeley's deliberate indifference claim. A plaintiff inmate may state an Eighth Amendment claim by challenging either: (1) the deliberate indifference to serious medical need; (2) the specific conditions of confinement; or (3) the excessive use of force. Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quotation omitted). A serious medical need may also be found when the need is worsened by a delay in treatment. Id. Either way, the medical need must be one that, if left unattended, poses a substantial risk of serious harm. Id. Deliberate indifference requires a showing of subjective knowledge of a risk of

serious harm and disregard of that risk by conduct that is more than gross negligence. Danley v. Allen, 540 F.3d 1298, 1312 (11th Cir. 2008), overruled in part on other grounds by Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In Danley, the plaintiff alleged deliberate indifference to a serious medical need based on the defendant jailers' refusal to decontaminate him after spraying him with chemical agents. Danley claimed that the jailers had sprayed him at close range for three to five seconds in the doorway of a small, poorly ventilated cell, and pushed him into that small cell for about twenty minutes, while he screamed he could not breath and the jailers laughed at him. Id. at 1304. The jailers then allowed him a two-minute shower and returned him to a group cell, which was also insufficiently ventilated. Id. Danley alleged that he had suffered chemical conjunctivitis and bronchospasms because of the delay in treatment. Id. at 1305.

In holding that the plaintiff had stated a claim, we stressed that "[t]he serious medical needs Danley alleges . . . are the effects of prolonged exposure to pepper spray with inadequate decontamination and poor ventilation, not the immediate effects of the pepper spray." Id. at 1311. As for deliberate indifference, we said that "[t]he allegations in the complaint are that the jailers took only ineffective measures to remedy the need and then mocked Danley and ignored his pleas for help." Id. at 1313. We also noted that the jailers allowed Danley only a two-minute decontamination shower, while the jail's own policy required a fifteen-

minute shower in order to ameliorate the effects of the spray. Id. at 1312. Concluding that Danley had stated a clearly established serious medical need and the jailers' deliberate indifference, we stated simply that "the jailers forced Danley to wait for too long before allowing him to shower," which resulted in needless pain, breathing problems, and inflamed eyes. Id. at 1311.

Here, McNeeley put forth evidence to suggest that he had been sprayed a substantial amount by one of the officers who taunted him by saying, "I drowned your ass in hotsauce didn't I," and, "Burn motherf---er burn." There was also evidence that when the CERT officers -- Geyer and Risi -- extracted him from his cell and bound him in a four-point restraint chair, they refused to allow him to decontaminate even though he complained that he was having extreme difficulty breathing, his skin was burning, and his eyes were red. At that point, about an hour had passed since the spraying, and McNeeley was complaining about its effects. Corporal Bertuzzi was not on the CERT team, but admitted that he photographed McNeeley being put into the restraint chair. About four hours after being sprayed, McNeeley was allowed to shower for approximately five to ten minutes. When returned to his cell, which he says had not been decontaminated, he continued to complain about his eyes for some amount of time and to seek medical attention up to three months for cracked, peeling skin and a wrist injury.

9

This Court said in <u>Danley</u> that after a detainee was quieted by pepper spray and was no longer a disruption or threat, a jailer's refusal to permit proper decontamination violated a clearly established right because existent "general legal principles" were enough to clearly establish the right.  540 F.3d at 1313.  Here, the record contains evidence that Corporal Bertuzzi and Deputies Risi and Geyer knew that McNeeley had been pepper-sprayed; heard his complaints while he was being put into the restraint chair; and were aware that he was not allowed to decontaminate his person for four hours.  Even if McNeeley was able to partially self-decontaminate in his cell by putting water on his eyes, <u>Danley</u> noted that a two-minute shower could be insufficient for decontamination -- especially here, where McNeeley continued to complain loudly about an hour later when they were restraining him.  Moreover, although the Defendants point to evidence that his skin and wrist issues are unrelated to the September 7 incident, there is also evidence suggesting otherwise.  Thus, based on <u>Danley</u>, Defendants Bertuzzi, Risi and Geyer were on notice that delaying a proper decontamination for over twenty minutes despite complaints about the effects of pepper spray could result in a clearly established constitutional violation.  The district court did not err in denying them qualified immunity at the summary judgment stage on McNeeley's deliberate indifference claim.[2]

---

[2] To the extent the Defendants dispute McNeeley's complaints about his mental illness and his

As for Deputies Fenech and Cox, however, there is no evidence that they witnessed McNeeley being put into the restraint chair, or that they were otherwise aware of his requests for decontamination. Danley emphasized that the jailers there laughed while the plaintiff complained about the effects of pepper spray, and ignored his pleas for help. We cannot say that it is clearly established under the law that officers who apply pepper spray to an inmate, do not hear his complaints, and are not around while he is being denied decontamination can be held liable for deliberate indifference. We, therefore, reverse the denial of summary judgment for Fenech and Cox on McNeeley's deliberate indifference claim.

While we agree that summary judgment was properly denied for certain Defendants on McNeeley's deliberate indifference claim, we cannot say the same for his conditions-of-confinement claim against Lieutenant Wilson and Corporal Bertuzzi. To challenge the conditions of confinement, a prisoner must make "an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind." Thomas, 614 F.3d at 1303 (11th Cir. 2010) (quotation omitted). The plaintiff must show "extreme deprivations" and the deliberate indifference of the defendants. Id.

injured wrist, we do not read his brief as raising these issues as separate claims; rather, he appears to argue that his mental illness and wrist injury exacerbated the effects of the delay in decontamination.

11

McNeeley's conditions-of-confinement claim is based on: (1) the failure to protect McNeeley from "noise torture" caused by inmate Swartz in light of McNeeley's mental illness; (2) the failure to decontaminate McNeeley before restraining him in the chair; (3) the failure to decontaminate his cell; (4) McNeeley's placement in a contaminated cell for days; and (5) the delay in providing medical treatment.

Here, the district court erred in denying Defendants Wilson and Bertuzzi summary judgment on their qualified immunity defense to McNeeley's conditions-of-confinement claim. Unlike in Danley, McNeeley was not restrained in the cell in which he had been pepper-sprayed; rather, he was moved to the yard when he was placed in the restraint chair. While he claims that the cell in which he was sprayed -- and later returned to -- was never decontaminated, it is undisputed that several hours had passed since he was sprayed, and he does not say -- as in Danley -- that the cell was poorly ventilated. Nor does McNeeley say that he actually complained to the officers about the effects of the pepper spray on him before he was placed in the restraint chair. Moreover, Danley involved deliberate indifference and excessive force claims; not conditions of confinement. It even goes so far as to suggest that failing to decontaminate a cell, or the prisoner himself, from pepper spray would not constitute a conditions-of-confinement claim. Danley, 540 F.3d at 1308-09 ("[S]ubjecting a prisoner to special confinement that causes him to suffer increased effects of environmental

conditions -- here, the pepper spray lingering in the air and on him -- can constitute excessive force. This circumstance is to be distinguished from environmental conditions that generally affect the inmates in the jail, which are analyzed as conditions of confinement claims.") (citations omitted). In any event, McNeeley cites no law clearly establishing a conditions-of-confinement claim based on the failure to decontaminate the prisoner or his cell from pepper spray.

Nor, moreover, does he offer any law clearly establishing a conditions-of-confinement claim based on "noise torture." Rather, the very case he cites disputes this notion. See Hargrove v. Henderson, 1996 WL 467516, at *8 n.4 (M.D. Fla. Aug. 13, 1996), aff'd, 124 F.3d 221 (11th Cir. 1997) ("Since there is no clearcut standard delineating permissible levels of noise in the prison setting, the law in this area is not clearly established."). As a result, we are compelled to reverse the denial of qualified immunity at the summary judgment stage for Wilson and Bertuzzi on the conditions-of-confinement claim.

Finally, we are unpersuaded by Lieutenant Wilson and Corporal Bertuzzi's argument that the district court erred in denying them summary judgment on their qualified immunity defense to the supervisory liability claim. "[S]upervisors are liable under § 1983 either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation."

13

Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation omitted). "A causal connection can be established by, inter alia, facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (quotation omitted). Here, there is evidence in the record that both Bertuzzi and Wilson knew McNeeley had been sprayed with pepper spray; both were present an hour later when he was put in the four-point restraints chair, and complaining about the effects of pepper spray; and neither did anything to allow him proper decontamination. The Defendants also admit in the reply brief that Lieutenant Wilson knew McNeeley was being held in the chair without a decontamination shower for several hours after being sprayed with chemical agents. Danley clearly established that these allegations articulate an Eighth Amendment violation, and thus Lieutenant Wilson and Corporal Bertuzzi were not entitled to summary judgment on the supervisory liability claim.

In short, we affirm the district court's denial of summary judgment for Bertuzzi, Risi and Geyer on the deliberate indifference claim, and affirm the district court's denial of summary judgment for Wilson and Bertuzzi on the supervisory liability claim. However, we reverse the denial of summary judgment for Fenech and Cox on the deliberate indifference claim, reverse the denial of

14

summary judgment for Wilson and Bertuzzi on the conditions-of-confinement claim, and remand for further proceedings consistent with this opinion.

**AFFIRMED in part, REVERSED in part, and REMANDED.**