[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-11365

Non-Argument Calendar

_____

BYONCA LOGAN,

Plaintiff-Appellant,

*versus*

MICHAEL ISRAEL,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cv-00237-KD-MU

_____

Before JILL PRYOR, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Byonca Logan appeals the district court's grant of Defendant Micah Israel's[1] motion for summary judgment in her excessive force and false arrest suit against him. On appeal she argues that the district court erred when it held that Officer Israel was entitled to qualified immunity on both of her claims.

## I. FACTS

The district court set forth the pertinent facts:

> [On] November 27, 2021, . . . Ms. Logan went to downtown Mobile to meet up with friends and watch the Iron Bowl. After the game, she eventually met a friend at the Lit Cigar Lounge on Dauphin Street before heading home to change. Ms. Logan returned to the Lit Cigar Lounge around 9:00 p.m. to meet up with different friends and was drinking alcohol. The bar was crowded, and Ms. Logan got pushed into a woman who was not pleased about being pushed. According to Ms. Logan, the woman was "hung up" on being pushed, which "kind of threw the

---

[1] Officer Israel was improperly named Michael in the complaint.

energy off in there." Subsequently, Logan and her friends decided to leave Lit Cigar Lounge for Lure, a bar farther east on Dauphin Street. Walking out, the woman into whom Ms. Logan was pushed threw a drink at Logan and her friends, which prompted hollering and cursing between the woman and Logan's friends. Unbeknownst to Logan and her friends, a separate group of unknown women were waiting outside of the Lit Cigar Lounge, one of whom sprayed mace or pepper spray into Logan's face. "And from there, I mean, a fight occurred." Ms. Logan does not dispute that she was involved in this fight, and that "she was throwing and taking punches with at least two different women." Bystander video footage indicates that Logan, a woman with long, brown hair wearing a brown and white outfit, was fighting several different women. Logan can be seen trading punches with a woman in a red shirt as they both hit the ground and got back up. After a woman in a white sweater tried to grab Logan's wrist, Logan hit her several times, and a woman with long, orange hair wearing a blue hat joined the other in fighting off Logan. Logan was then pitted against the wall of one of the buildings on Dauphin Street before again hitting the ground, all the while trading kicks, shoves, and slaps with numerous others. Meanwhile, a crowd gathered

around can be seen watching, jeering, and filming as the scuffle takes place.

C. Ms. Logan's Arrest and the Complained-Of Injury

According to Officer Israel, given the "hectic" nature of the club scene following the Iron Bowl, he was stationed in the area of Dauphin Street and North Jackson Street that same night. Officer Israel supposedly saw a crowd of people running over to a fight involving women. Per Officer Israel, he and his supervisor, Officer Byrd, walked up to the altercation in which Ms. Logan and other women, including Allenson Ingram, were "scuffling around," with "blows on both sides still being thrown." Body-worn camera (BWC) footage from Sergeant Gibbs, and Officer Byrd, confirms that the police officers, including Officer Israel, a black male with short hair, approached what looks like the mostly finished Dauphin Street confrontation. Logan can be seen facing the woman with long, orange hair as that woman was pinned up against the wall of a building. Logan can also be seen in Officer Israel's BWC footage. Suddenly, Ingram and the woman with long, orange hair started slapping each other and Ingram can be seen pulling her hair before the officers broke up the fight and handcuffed Ingram.

Officer Israel asserted in his deposition that Ms. Logan was still trying to fight with Ingram while Ingram and the lady with orange hair were tussling. Logan disputes that she attempted to engage in this fight, the "insinuation" that she subsequently struck Officer Israel with her right arm, and that her arm came down on Officer Israel. Meanwhile, Sergeant Gibbs' BWC footage shows Logan's leg touching Ingram, who was on the ground being handcuffed, and Logan's arm reaching for Ingram and then touching Officer Israel, who was assisting with Ingram's arrest. Bystander video confirms that Logan reached for Ingram while Sergeant Gibbs and Officer Israel were in the process of restraining Ingram, and that Sergeant Gibbs shoved Logan backward before she tried to walk away. Plaintiff does not dispute that she was shoved. Officer Israel can then be seen beelining towards Logan. According to Officer Israel, he knew that Logan was attempting to reach Ingram and in so doing, Ms. Logan hit him with a fist. After confirming with Sergeant Gibbs that Gibbs was able to complete handcuffing Ingram, Officer Israel went to detain Ms. Logan. He directed her to a building on the south side of Dauphin Street to keep her separated.

At that point, Officer Israel grabbed Ms. Logan's right arm with his right arm before pushing her against the wall of a building. Officer Israel can be

heard telling the crowd to "back up" and "move." After the video briefly pans away, Ms. Logan can then be seen facing Officer Israel. Officer Israel held Logan's right wrist with his left hand and had his right arm on her right shoulder. Officer Israel then attempted to spin Logan around to again face the wall by pushing her right arm behind her with his left hand while moving her body in the same direction with his right arm. They both spun around before Officer Israel finally had Logan against the wall again. Logan then placed both hands behind her back. Officer Byrd then entered the scene and handcuffed Logan while Officer Israel backed away. On Officer Byrd's BWC footage, Logan can be heard telling Officer Israel, "I'm not fighting you!" She repeated to Officer Byrd that she was not fighting Officer Israel while Officer Byrd was handcuffing her.

Ms. Logan "does not dispute the objective physical actions that are depicted" in the bystander video. She stated in her deposition that she approached the officers handcuffing Ingram to try to "clear" one of her friends of wrongdoing to the officers but then Officer Israel saw her, who "grabbed [her] from the back. She remembered being "pulled, twisted, thrown." Ms. Logan also testified that she did not resist Officer's Israel's attempt to arrest her, that Officer Israel "knew who [she] was" during the arrest,

and that when she asked him why he was arresting her, he told her, "Shut the fuck up, you just hit me." Officer Israel, on the other hand, testified that he gave her verbal commands to turn around and stop moving but that she failed to comply. He explained that he was attempting to put handcuffs on her but did not because she "kept turning around" and "kept not complying." Officer Israel disputed that he recognized Ms. Logan at the time he attempted to handcuff her. ("If I would have seen her probably more than that, yeah, but at that time I still had a job to do.").

Once in handcuffs, Ms. Logan told Officer Byrd, "I really think my shoulder's broke." ( "I really think my arm's broke." Officer Byrd can be heard calling EMS for her.

Dist. Ct. Doc. 43 at 2-6 (internal citations omitted).

Logan brought suit against Officer Israel and the City of Mobile for false arrest and excessive force. The district court granted summary judgment to the City and Logan does not appeal that ruling. The district court also granted summary judgment to Officer Israel on the excessive force and false arrest claims on qualified immunity grounds.

## II. STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Richmond v. Badia*, 47

F.4th 1172, 1179 (11th Cir. 2022). "A grant of summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Although we must view the facts in favor of the non-moving party, we accept video evidence over the nonmoving party's account when the former obviously contradicts the latter. *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010).

## III.  DISCUSSION

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officers have "the burden to establish that they were acting within their discretionary authority" when raising qualified immunity as a defense. *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022). If the officers satisfy that burden, then the burden shifts to the plaintiff to establish that (1) "the defendant violated a constitutional right," and (2) "the violation was clearly established." *Christmas v. Harris Cnty*, 51 F.4th 1348, 1354 (11th Cir. 2022) (quotation marks omitted).

We have stated:

> There are three recognized ways to show that a law is "clearly established." First, a plaintiff may show that a "materially similar case has already been decided," whose facts are similar enough to give the police notice. *See Keating v. City of Miami*, 598 F.3d 753, 766

(11th Cir. 2010). Second, he may show that a "broader, clearly established principle should control the novel facts" of his case. *Id.* This "broader" principle may be derived from "general statements of the law contained within the Constitution, statute, or caselaw." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (alteration adopted) . . . (quoting *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003)). Finally, a plaintiff may show that the officer's conduct "so obviously violates [the] constitution that prior case law is unnecessary." *Keating*, 598 F.3d at 766 (quoting *Mercado*, 407 F.3d at 1159). While we must be mindful of the "specific context of the case," we "do[ ] not require a case directly on point for a right to be clearly established." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 142 S. Ct. 4, 7–8, 211 L.Ed.2d 164 (2021) (per curiam).

*Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023). To determine whether a right was clearly established, we look to the decisions of the United States Supreme Court, the Eleventh Circuit, and the the highest court of the relevant state. *See Barnes v. Zaccari*, 669 F.3d 1295, 1307 (11th Cir. 2012).

*A. False Arrest*

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. amend. IV. "[A]n arrest is a 'seizure' of the person" under the Fourth Amendment. *Case v. Eslinger*, 555 F.3d 1317, 1326 n.10 (11th Cir. 2009). Whether a seizure is reasonable hinges on the presence of probable cause. *See id.*

at 1326. "[P]robable cause exists where a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a 'substantial chance of criminal activity." *Edger*, 84 F.4th at 1236 (internal quotations removed)(quoting *D.C. v. Wesby*, 583 U.S. 48, 61 (2018)). Probable cause "is not a high bar," and "'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Paez v. Mulvey*, 915 F.3d 1276, 1286 (quoting *Wesby*, 583 U.S. at 57). It is a "flexible and fluid concept" that focuses on the "totality of the circumstances." *Id*. at 1286. "In the false arrest context, arguable probable cause exists where a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Edger*, 84 F.4th at 1236-37 )(internal quotations removed)(quoting *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023)).

The district court did not err when it granted Officer Israel qualified immunity for the false arrest charge. Although Logan is correct that Officer Israel appears not to have observed her—based on his body cam footage and the timing of his arrival on the scene—engage in any criminal activity with respect to the initial fight, he did observe her when she attempted to fight with the woman he was arresting. The body cam footage shows her attempt to strike the woman being arrested and in doing so, she brushed against Officer Israel. It was at that point that Officer Israel turned around to address the person whose arm was attempting to strike the arrestee, saw Logan (who had retreated), and arrested her. Given that Officer Israel had already seen the fight

24-11365                 Opinion of the Court                       11

resume in a similar way when the arrestee went after another woman, he assessed the surrounding circumstances and surmised that Logan was attempting to resume the fight herself with the arrestee. Thus, given the circumstances and what he saw, Officer Israel had arguable probable cause to arrest Logan for either disorderly conduct[2] or harassment.[3]

*B. Excessive Force*

We assess excessive force claims in the context of an arrest under the Fourth Amendment's objective reasonableness standard. *Richmond*, 47 F.4th at 1182. In doing so, we "balance the nature and quality of the intrusion on the individual against the government justification for using force." *Id.* "[W]e consider: (1) the severity of

---

[2] Under Alabama law,

> (a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he or she does any of the following:
>
> > (1) Engages in fighting or in violent tumultuous or threatening behavior.

Ala. Code § 13A-11-7(a)(1).

[3] Under Alabama law,

> A person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he or she either:
>
> > a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.

Ala. Code § 13A-11-8(a)(1)(a).

the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* Additionally, we will consider "the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted." *Id.* (citing *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The district court, in granting qualified immunity to Officer Israel, first concluded that a reasonable officer at the scene would have concluded that "force would be necessary to restrain an individual trying to interfere with another brawler's arrest." Dist. Ct. Doc. 43 at 18. The court found it reasonable also for Officer Israel to have inferred that Logan posed an immediate threat to the officers' safety. *Id.* The court further noted that bystander video showed that Officer Israel used "a permissible 'soft hands' takedown maneuver after Logan flipped from facing the wall." *Id.* at 19. Finally, the court observed that the fact Logan was unrestrained distinguishes this case from the Eleventh Circuit cases that have held an officer's force was gratuitous and thus concluded that Officer Israel did not use excessive force. *Id.* at 19-20.

Logan argues that Officer Israel applied excessive force when he handcuffed her and broke her arm in the process. She asserts

24-11365                Opinion of the Court                13

that she did not resist arrest, her purported crime was not severe, she did not pose an immediate threat, there was no need for the use of force, and her injury was severe. All of these factors, she argues, lead to the conclusion that the force employed by Officer Israel was disproportionate and excessive.

We conclude that Officer Israel probably did not use excessive force when he handcuffed Logan. In this determination, we are aided by videos from bystanders and the officers' body cams. These videos show that the officers arrived on the scene of a recently dispersed street fight between two groups of women in the entertainment district of Mobile, Alabama. Even though it was after midnight, there were many people milling around the area. As the officers approached the scene, one of the brawlers attacked another woman. The officers immediately separated the two women and began to handcuff the instigator. While the officers were attempting to handcuff the instigator, several people interfered with the process and would not clear away; in short, the scene was chaotic. As the instigator was being handcuffed and was on the ground, it reasonably appeared to Officer Israel that Logan attempted to reach past two of the officers to attack the instigator. One of the officers pushed Logan away. At this point, Officer Israel left the other officers to pursue and arrest Logan. He grabbed her arm and led her to the wall, so that she was facing it with Officer Israel holding her arms behind her. During this time, Logan is seen talking to Officer Israel over her shoulder, although the video did not record what she was saying. The video resumes a few seconds later with Logan now facing Officer Israel, again speaking to him.

At this point he pulled her arm up and spun her around to face the wall so that he could handcuff her, which he then did successfully as she then provided no resistance.

Under the circumstances that Officer Israel faced, his use of force probably was permissible. The officers encountered a volatile scene with brawlers re-engaging in fights even with the police present. Logan even went so far as to try to attack a woman on the ground whom the officers were trying to handcuff. The extent of Logan's resistance to Office Israel's attempt to arrest her—after he had gotten her to the wall and was holding her hands behind her back, readying to handcuff her—is unclear because the video panned away before returning a few seconds later to reveal her standing against the wall, facing the officer with her hands in front of her. However, what the video does show is that she not being compliant. Given what he had observed of her behavior and the actions of the bystanders, Officer Israel was entitled to use force to handcuff one of the sources of the volatility. As the Supreme Court has noted, police officers are called upon to make quick judgments "'in circumstances that are tense, uncertain, and rapidly-evolving.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015) (quoting *Graham v Connor*, 490 U.S. at 397 (1989). Officer Israel did not hit, punch or kick Logan; he did not have assistance from other officers; he did not use a weapon; or bring her to the ground. His actions were not quick or forceful; rather, he used the soft hands technique to bring her into the position to handcuff her. Given the environment he was acting in and the actions of both Logan and the

crowd, the amount of force Officer Israel used probably was reasonable.

In the preceding two paragraphs, we said that Officer Israel's actions were probably permissible and probably reasonable and probably did not constitute the use of excessive force. However, we need not decide that question, because it is very clear that his actions did not violate clearly established law. There is no materially similar case that would have put a reasonable officer on notice that such actions violated clearly established law. And there is no obvious clarity—either from case law or broader clearly established principles—that made it obvious to all reasonable government actors in Officer Israels' shoes that what he was doing violated federal law. Accordingly, it is clear that Officer Israel is entitled to qualified immunity.

For the foregoing reasons, the decision of the district court is

AFFIRMED.